JaFITZSIMMONS, Judge.
This appeal emanates from a trial court finding of an abuse of discretion by the Recreation and Park Commission for the Parish of East Baton Rouge in its site selection for a eommunity/neighborhood park in an expropriation proceeding. The Recreation and Park Commission for the Parish of East Baton Rouge (hereinafter referred to as BREC) appealed the trial court decision. We affirm the lower court determination for the reasons delineated below.
FACTS
The superintendent of BREC, who was qualified as an expert in the field of Park and Recreation Administration, testified that there was a need to create a community/neighborhood park for the approximately eleven to twelve thousand residents in the general vicinity. The neighborhood at issue is referred to as the “Stevendale” area. There are no parks in close proximity. The land under contention is a 25 acre portion of a 1,100 acre tract of industrially zoned land owned by defendant/áppellee. The property to the east and southeast, where the alternate sites are located, is interspersed with residential neighborhoods and zoned residential or recreational. The remainder of the environs surrounding the subject tract is primarily zoned M-l industrial.
Mr. William Palmer, the department head of Planning and Engineering Department of BREC, was qualified as an expert in planning and engineering of parks and recreation. The proposed park was planned as a community park. It was conceived to include *572 a recreation center, at least two ball fields and soccer fields, a tennis court, parking facilities, picnic areas, and other possible special facilities. Terrain and topography were specified by BREC’s two witnesses as being important in the selection of a potential site, 1.e., the park required a ^relatively flat site that was on ground high enough to build. Mr. Palmer testified that BREC was attempting to avoid any issues of wetlands encroachment in its selection of the proposed property over the other possible considerations.
Mr. Eugene Young, the superintendent of BREC, was admitted as an expert in the field of park and recreation administration, location, size, types of facilities, programs, and areas to be serviced. Mr. Young testified that approximately twenty-five acres of land was sought. He echoed Mr. Palmer’s opinion that terrain and topography were important factors in the review of potential sites. Mr. Young and Mr. Palmer each stated that one of the primary alternate sites, referred to as the Landry tract, contained problems because it sloped off significantly in the rear, there were two ponds on the site, and there were two unusable structures. Mr. Young also testified that the second most qualified alternate site, the Optimist Club land, possessed a building that was in bad shape, and that there was only a narrow strip on the property that was high enough to accommodate the purposes of the proposed park. Mr. Palmer dismissed the other possible alternate locations as being either too small or possessing topographic problems.
The trial court in the instant matter found that the expropriation was for a necessary purpose.[2] However, it held that the selection of the defendant’s site was an abuse of discretion. In written reasons, the court found that the subject property was not “well-suited for a park/reereation area because of its proximity to probable future industrial businesses and its M-l zoning.” The judge expressed great concern about safety and environmental factors. Finally, the court identified two alternate sites as being suitable and |4readily accessible to the residential public, especially the Landry site which already possessed sewerage and utility lines. The court also noted that the existence of gas, electricity and sewerage significantly reduced any additional cost to grade the land.
LAW
The standard of review to be employed by the court in an expropriation case is whether the expropriator acted in bad faith or so arbitrarily and capriciously that its action was without an adequate determining principle, or it was unreasoned. United States v. Carmack, 329 U.S. 230, 243, 67 S.Ct. 252, 258, 91 L.Ed. 209 (1946); State, Department of Transportation and Development v. Estate of Griffin, 95-1464, p. 4 (La. App. 1st Cir. 2/23/96); 669 So.2d 566, 568. Discretion may be abused by an expropriat ing agency if it is acting without considering and weighing relevant factors including availability of an alternate route (in this instance: location), costs, environmental factors, long-range area planning, and safety considerations. Id.
The most serious impediment to the appropriateness of the proposed site for expropriation as a neighborhood/community park is its classification in the Horizon Plan.[3] The 2010 Land Use Plan, Horizon Plan, is a comprehensive master land use and development plan for the physical development of the metropolitan area of East Baton Rouge Parish and the City of Baton Rouge. It was adopted, effective April 1, 1992, by a vote of the Metropolitan Council of Baton Rouge after publicly advertised hearings. The location of a park in the proposed M-l industrially zoned area violates the Horizon Plan. In contrast, | sthe alternate sites reviewed at trial are compatible with the Horizon Plan.
Troy Lee Bunch, the newly appointed Director of Planning for the City of Baton Rouge and the Parish of East Baton Rouge, was accepted as an expert in the area of landscape architecture and urban and region *573 al planning and zoning. He testified that a park in an industrially zoned area conflicted with the Horizon Plan. Mr. Bunch opined that it would be necessary for BREC to obtain an alteration to the future plan concept before attempting to place a recreation park in the industrially zoned tract at issue. The three methods indicated at trial to change the Horizon Plan were via an amendment,[4] by an alteration, or pursuant to the schedule plan update process.
Mr. Bunch’s interpretation of the Horizon Plan and the proposed site’s conflict with that plan was confirmed by Robert Dolese. Mr. Dolese, the recently retired planning director after fifteen years and assistant director for ten years, was qualified as an expert in landscape architecture, city planning and as a professional urban planner. He opined that a site south of the railroad tracks or closer to Florida Avenue would be preferable because it would service additional people. Mr. Dolese stated that there did not exist sufficient industrially zoned property in the area and that the current M-l zoning is the best use of the subject tract.
Great weight is accorded by a reviewing court to factual conclusions of the trier of fact. Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact are not to be disturbed. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993)
|6In finding that BREC did not satisfy the criteria to be considered by an expropriator, the court recognized two of the possible eight alternate sites as being suitable for development as a community park. The mere availability of alternate sites alone does not substantiate an arbitrary or capricious selection. Calcasieu-Cameron Hospital Service District v. Fontenot, 628 So.2d 75, 79 (La.App. 3rd Cir.1993); writ denied, 634 So.2d 854 (La.1994); Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369, 375 (La.App. 1st Cir.1961). The existence of alternate sites is,.however, one of the variables to be considered. Red River Waterway Commission v. Fredericks, 566 So.2d 79, 83 (La.1990).
A review of the record discloses that the alternate Landry tract is approximately twenty-one acres. The property is comprised of an L-shaped configuration, which is not as amenable as the subject tract’s rectangular form to development as a community park. The L-shaped land extends around an adjacent residentially zoned subdivision. Although the physical location of the land contains many favorable features, it was uncon-tradicted that the topography of the rear portion of the Landry site was not well suited for development of recreational facilities.
The second alternate site, the Optimist Boys’ Club property, was reviewed in court. Its general proximity to the residential neighborhoods was established. However, only approximately twelve acres of the land on the site were indicated to be “usable.”
The testimony of the representatives of BREC that an approximately twenty-five acre site was reasonable and suitable Ufor its need to develop the proposed community park was not sufficiently rebutted! It appears from the information presented in the record that the site selected by BREC would adequately serve the spatial requirements for the park’s development. None of the alternate sites contain approximately twenty-five acres of topographically suitable land for the proposed community park.
Although physically suited for the purpose, the industrially zoned selection flies in the face of the very master plan that is designed to manage proper, controlled, delineated growth and development. Long range planning is one of the principal criteria required to be considered by an expropriating body. Red River Waterway Commission v. Fredericks, 566 So.2d at 83. The selection of the BREC site is in direct violation of the long range planning criterion. The submersion of the proposed neighborhood park in a massive tract of land designated for future *574 industrial use poses critical safety and environmental concerns. Moreover, the trial court did not agree with the testimony on behalf of BREC that the proposed site was the only land economically practical. Thus, the expropriating agency failed to demonstrate that it had employed ap adequate determining principle in its consideration of the relevant criteria of long range planning, safety, environment, and costs. See State, Department of Transportation and Development v. Estate of Griffin, 95-1464 at p. 4; 669 So.2d at 568.
In the absence of an adjustment or alteration of the conflicting Horizon Plan by the governing Metropolitan Council to allow for the placement of a park in the* subject site, the expropriating agency abused its discretion by acting without adequately considering and weighing relevant factors and | gprinciples. Red River Waterway Commission v. Fredericks, 566 So.2d at 83. The trial court’s finding that the expropriator was arbitrary and capricious in its disregard of the long range plan adopted by Baton Rouge is thus affirmed.
Costs associated with this appeal are assessed to Recreation and Park Commission for the Parish of East Baton Rouge in the sum of two thousand six and 87/100 dollars ($2006.87).
AFFIRMED.
LeBLANC, J., dissents and assigns reasons.

. No appeal was taken from this portion of the appeal.

. 2010 Land Use Plan, Horizon Plan, approved by Metropolitan Council Resolution 31988, adopted January 7, 1992, effective April 1, 1992.

. Testimony revealed that an amendment to the Horizon Plan requires the permission of the property owner.